

# OFFICE OF THE ATTORNEY GENERAL OF TEXAS

## AUSTIN

GERALD C. MANN
ATTORNEY GENERAL

Honorable Geo. H. Sheppard
Comptroller of Public Accounts
Austin, Texas

Dear Sir:

Opinion No. 0-1183
Re: Under the Departmental Appro-
priation Bill for the Biennium
ending August 31, 1939, and the
facts stated, may the Comptroller
lawfully issue warrants against
the Texas Old Age Assistance Fund
for current salaries and other
administrative expenses incurred
by the Texas Old Age Commission
in the administration of the Old
Age Assistance Laws.

Inasmuch as your inquiry of August 11, 1939, is based upon
a rather involved question of law and fact, we quote fully from your
letter upon the question involved and the supporting factual back-
ground:

"At this time there exists in the Texas Old Age Assist-
ance Fund in the State Treasury a deficit in the amount of
$2,054,944.93. In considering this fact, you are advised
that there are now outstanding certain interest-bearing
warrants in the amount of $2,230,779.00 which constitute an
obligation or charge against the Texas Old Age Assistance
Fund. These warrants were issued and are now outstanding
by authority of House Bill No. 37, Acts, 44th Legislature,
3rd Called Session, and House Bills Nos. 179 and 1046, Acts,
46th Legislature, Regular Session; and under certain pro-
visions of these acts, as passed by the Legislature, these
interest-bearing warrants represent deferred liabilities
which are to be retired at future dates as directed by
House Bill No. 179, supra, and provisions of contracts
entered into by and between the Texas Old Age Assistance
Commission and holders of said warrants, which contracts

NO COMMUNICATION IS TO BE CONSTRUED AS A DEPARTMENTAL OPINION UNLESS APPROVED BY THE ATTORNEY GENERAL OR FIRST ASSISTANT

were executed by virtue of authority contained in said
laws. Retirement of these obligations against the Texas
Old Age Assistance Fund, as represented by these warrants
and treasury certificates exchanged therefor, is specifical-
ly provided for by statute, and said warrants do not con-
stitute an immediate obligation against the Texas Old Age
Assistance Fund.

"By virtue of the appropriation act that provides for
appropriations for State Departments for the biennium end-
ing August 31, 1939, all income to the Texas Old Age
Assistance Fund, together with any monies in the fund at
the end of a prior fiscal year, are appropriated for cer-
tain purposes, among which is administrative expenses
incurred in the administration of the Texas Old Age Assist-
ance Law within the limits of that Law. Your attention
is called to the provisions of House Bill No. 8, Acts,
44th Legislature, 3rd Called Session, and particularly
to Section 11b of Article 2 of said Act, which in part
reads as follows: 'Provided that if the fund is insufficient
to pay all grants in full, the same should be paid prorate
based on the amount granted to each recipient.' Your atten-
tion is further called to the fact that by other provisions
of House Bill No. 8, supra, certain revenues are allocated,
as same are collected, to the Old Age Assistance Fund to
be expended for purposes of carrying out provisions of the
Old Age Assistance Laws. By these mentioned provisions of
the laws of Texas, when current funds are insufficient to
meet authorized expenditures for assistance benefits and
administrative expenses, there is no alternative except
that grants of assistance must be prorated so that no
actual deficit can accrue when assistance warrants and ad-
ministrative expense warrants are issued.

"Warrants in payment of administrative expenses are
drawn from the Texas Old Age Administration Fund, which
fund is created (not by Statute) by transfer of money from
the Texas Old Age Assistance Fund to the Administration
Fund, and after the transfer is made the Administration
Fund shows a credit balance.

"In view of these facts, please advise whether this de-
partment should issue warrants in payment of salaries,
expenses, etc., incurred in the administration of the Texas
Old Age Assistance Laws.

"If you reply in the negative, please advise what pro-
cedure should be followed in issuing warrants for administra-
tive expenses."

Senate Bill No. 138, Chapter 504, Acts, Regular Session, 45th Legislature, commonly known as the Departmental Appropriation Bill, sets up for the biennium ending August 31, 1939, a schedule of administrative salaries and maintenance expenses for the Texas Old Age Assistance Commission, a division of the State Board of Control, and in this connection makes the following appropriation from the Texas Old Age Assistance Fund:

"All income to the Texas Old Age Assistance Fund, together with any balances on hand at the end of a prior fiscal year, are hereby appropriated for each of the fiscal years ending August 31, 1938, and August 31, 1939, to the Texas Old Age Assistance Commission for aid and assistance, and for salaries, equipment, supplies, travel, maintenance and contingent expenses necessary in the extension of aid and in administering all the duties required of said Commission by the Old Age Assistance Laws, and for payment of interest bearing warrants, together with interest thereon, outstanding on August 31, 1937, that were issued against the Texas Old Age Assistance Fund under the provisions of House Bill 37, Acts of the Forty-fourth Legislature, Third Called Session; provided, in accordance with said laws, that the administrative expenses for any year shall never exceed five per cent of the total amount expended for Old Age Assistance. Provided further, that aid and assistance shall be granted and expended in the manner provided by law. In the event the above total itemized appropriations for administration are less than five per cent of the total expenditures for old age assistance and a necessity therefor exists, the Commission is authorized to hire additional employees and pay additional administrative expenses; provided in all events the total expenditures for all administration shall not exceed five per cent of the total expenditures for old assistance, and that no additional employee used shall be paid larger salaries than are above fixed for employees rendering similar services."

In order to determine whether there are currently any available funds in the Texas Old Age Assistance Fund for the payment of these administrative expenses and salaries, we must decide whether or not certain outstanding interest-bearing warrants in the amount of $2,230,779.00, and drawn against the Texas Old Age Assistance Fund in the payment of grants and assistance to eligible receipients, under House Bill No. 8, Acts, 34d Called Session, 44th Legislature, are properly to be considered in calculating the balance now in the Old Age Assistance Fund. Because if such aggregate sum of outstanding interest-bearing warrants is not to be reckoned with as a present

charge against the Old Age Assistance Fund, then it must follow, by virtue of certain provisions in the Old Age Pension Law and the Departmental Appropriation Act, that there is not now a deficit in the Old Age Assistance Fund.

The provision in the Old Age Assistance Act, House Bill No. 8, Acts, 3rd Called Session, 44th Legislature, to which we refer is that clause in Section 11b of Article 2 of said Act, which reads: "Provided that if the fund is insufficient to pay all grants in full, the same should be paid pro rata based on the amount granted to each recipient." And the language in the general Departmental Appropriation Bill to which we advert is that proviso which says: "Provided, in accordance with said laws, that the administrative expenses for any year shall never exceed five (5%) per cent of the total amount expended for Old Age Assistance." Considering these two quoted clauses together, and bearing in mind that the Texas Old Age Assistance Fund is appropriated for and devoted to only the two purposes to which such clauses relate, to-wit: the payment of grants to eligible aged and administrative expenses of the Texas Old Age Assistance Commission, it can be demonstrated, with mathematical certainty, that no deficit is possible at the present time nor can become possible in the future. This is because grants of assistance are prorated where the funds in the Old Age Assistance Fund are insufficient to pay such grants in full, and administrative expenses are correspondingly limited by these reduced assistance benefits by reason of the express limitation of such expenses to five (5%) per cent of the total amount expended for Old Age Assistance. So we see that the Legislature, in its wisdom, by the provisos above quoted, caused expenditures for assistance benefits and administrative expenses to keep step with the income finding its way into the Texas Old Age Assistance Fund from certain revenues in the way of occupation taxes which are allocated to such Fund under House Bill No. 8, Acts, 3rd Called Session, 44th Legislature.

Of course, as hereinabove stressed, our conclusion that no actual deficit exists in the Texas Old Age Assistance Fund by reason of the issuance of current assistance warrants and administrative expense warrants against such Fund is grounded upon the premise that certain interest-bearing warrants theretofore issued in payment of old age assistance benefits under authority of specific statutes, in the aggregate amount of $2,230,779.00 is not to be considered as a present subsisting charge against the Texas Old Age Assistance Fund. We will now proceed to a determination of this question, and for this purpose a review of the legislative background is necessary.

The first statute upon this subject is House Bill No. 37, Chapter 496, General and Special Laws, 3rd Called Session, 44th

Legislature, the purpose of which is plainly stated in the Emergency Clause as follows:

"Section 7. The fact that there are now accruing old age assistance benefits in amounts greater than the present monthly income to the Texas Old Age Assistance Fund, the fact that any tax bills passed by the present Called Session of the Legislature will likely not bring in any revenues for several months, and the fact that it would be unfair to require the receipients of old age assistance benefits to discount their warrants or carry the interest burden of the deficit, create an emergency and an imperative public necessity . . ."

To this end, Section 1 of the cited act clearly authorizes and requires the Texas Old Age Assistance Commission to issue interest-bearing warrants against the Texas Old Age Assistance Fund for the payment of Old Age Assistance Benefits, even though such fund should be clearly overdrawn and out of funds to pay such warrants. The language of this Section is as follows:

"Section 1. The Texas Old Age Assistance Commission is hereby authorized to pay interest, so long as said warrants are unpaid, on warrants issued against the Texas Old Age Assistance Fund for the payment of old age assistance benefits when the cash balance of the moneys deposited to the credit of said fund by the State of Texas is insufficient to pay in cash the State's part of the pension requirements, and there is hereby appropriated out of any moneys appropriated to the Texas Old Age Assistance Fund a sufficient amount to pay interest charges accruing under this Act, but in the event that interest is paid on or on account of such warrants as authorized in this Act, no such warrent, issued for a single month, including both principal and interest paid thereon or therefor, shall ever exceed Fifteen($15) Dollars of State money."

It is further provided in the Act that the Old Age Assistance Commission is not authorized to issue these interest-bearing warrants in excess of $3,000,000.00 or after March 1, 1937. Section 2 of this Act provides that the form and method of issuing such warrants and of paying the interest thereon shall be prescribed by the Texas Old Age Assistance Commission, and the Comptroller and Treasurer are authorized and directed to perform such duties as are required of them under the Act to accomplish its purpose.

Under this statutory authority the Texas Old Age Assistance Commission, for and in behalf of the State of Texas, entered into a contractual relation, evidenced by written contract of date November 28, 1936, with the Republic National Bank and Trust Company of Dallas, Texas, by the terms of which such Bank was to purchase such interest-bearing warrants and hold them subject to call by the officials designated in the act. By reason of this statutory authorization and contract executed pursuant thereto, the Texas Old Age Assistance Commission was able to continue the payment in full of all grants of assistance to the aged of Texas, out of income and revenue allocated to the Old Age Assistance Fund, all in keeping with the result sought to be accomplished, beyond all doubt by the Legislature under the Act hereinabove discussed authorizing the issuance of interest-bearing warrants to the extent of $3,000,000. This action by the Old Age Assistance Commission in executing such contract and continuing with the payment in full of old age assistance grants was in all things validated and confirmed by House Bill No. 1046, Acts Regular Session, 46th Legislature.

Again, in 1939, the Legislature found, as recited in the emergency clause of House Bill No. 179, Acts Regular Session, 46th Legislature, that there were "now accruing old age assistance benefits in amounts greater than the present monthly income to the Texas Old Age Assistance Fund," and that any tax bills passed by this Legislature would likely not bring in any revenues for several months, and "it would be unfair to require the recipients of old age assistance benefits to discount their warrants or carry the interest burden of the deficit." Therefore, the Legislature, by House Bill No. 179, Acts, Regualr Session, 46th Legislature, again authorized the Texas Old Age assistance Commission to issue interest-bearing warrants against the Texas Old Age Assistance Fund for the payment of old age assistance benefits even though the cash balance of the money deposited to the credit of said Fund was insufficient to pay the State's part of the pension requirements. The amount of such interest-bearing warrants which could be so issued was limited to $900,000.00.

As in the case of the first statute upon this subject, the State of Texas, through its proper officials, and under the authority of the statute next above cited and discussed, entered into contractual relations with the Republic National Bank and Trust Company of Dallas, Texas, on February 24, 1939, of like tenor, effect, and reading as the contract heretofore described, but involving only interest-bearing warrants in the amount of $900,000.00. The avowed purpose of this last statute and the contract thereunder, as the first, was to allow the Old Age Assistance Commission to continue

to pay in full all grants of old age assistance benefits to the aged, and all acts of the Commission in this regard were in all things validated and confirmed by House Bill No. 1046, Acts, Regular Session, 46th Legislature.

The interest-bearing warrents now outstanding in the amount of $2,230,779.00, described in your letter, include not only interest-bearing warrants in the amount of $900,000.00 issued by the Texas Old Assistance Commission under House Bill No. 179, Acts, Regular Session, 46th Legislature, but the balance of interest-bearing warrants remaining unpaid of the $3,000,000.00 issue of such warrents authorized by House Bill No. 37, Chapter 496, Acts, 3rd Called Session, 44th Legislature. The Legislature provided by House Bill No. 179, Acts, Regular Session, 46th Legislature for the retirement and liquidation of this entire out-standing balance of interest-bearing warrants issued under these two acts, at the times and in the amounts and manner fixed and provided by Sections 6 and 7 thereof. And by reason of its controlling effect in determining whether such outstanding warrants create a present deficit in the Old Age Assistance Fund, we copy in full such portion of the Statute:

"Section 6 (a) State Treasurer Payment of Outstanding Warrants. It is provided that the Treasurer of the State of Texas shall call all warrants now outstanding that have heretofore been issued under the authority and provisions of Chapter 496, Page 2084, Acts 1936, Forty-fourth Legislature, Third Called Session, and he is directed and authorized to pay said warrants, together with interest thereon, out of the Texas Old Age Assistance Fund, according to the following schedule:

"On October 10, 1939, warrants in the amount of One Hundred Thirty-Thousand, Nine Hundred and Eighty-seven Dollars ($130,987) shall be called and paid by the Treasurer, together with interest thereon, and on the 10th day of each month thereafter, the Treasurer is directed and authorized to call and pay the remaining outstanding warrants in the amount of Two Hundred Thousand Dollars ($200,000) per month, together with interest thereon, until such time as all outstanding warrants hereinabove referred to shall be called and paid in full, and there is hereby appropriated out of funds allocated in present and/or future laws of the Old Age Assistance Fund a sum sufficient to pay said obligations and the interest thereon.

"Section 6 (b) Same- Payment of Warrants Hereafter Issued. The Treasurer of the State of Texas is directed and authorized to call and pay all warrants that might hereafter be

issued under and by virtue of the provisions of this Act in approximate equal monthly installments on the 10th day of the months May, 1940, to September, 1940, both inclusive, together with interest thereon, out of the Texas Old Age Assistance Fund, and there is hereby appropriated out of funds allocated in present and/or future laws to the Old Age Assistance Fund a sum sufficient to pay said obligations and the interest thereon.

"Section 7 (1) Issuances of State's Obligation for Warrants Authorized. That the Old Age Assistance Commission be and is hereby authorized and directed to offer to and deliver to the holder, or holders, of the warrants which may be issued under the provisions of this Act and of the warrants heretofore issued for Old Age Assistance under authority of Chapter 496, Page 2084, Acts 1936, Forty-fourth Legislature, Third Called Session, and now outstanding, the State's obligation in the same principal amount, or amounts, in such forms and denominations as shall be determined by such Commission, approved by the Attorney General, and acceptable to such holder, or holders, bearing interest at not to exceed one and six-tenths (1.6) per cent per annum or not to exceed the rate of interest which shall be paid on or on account of the warrants which may be issued under the terms of this Act, whichever rate is the lower. Said obligations shall bear dates to be fixed by the Commission and shall mature exactly according to the schedules set out in Section 6 hereof.

"(2) State Treasurer-Duties. Upon exchange of the original warrants for the obligations authorized hereunder the State Treasurer shall retain in his possession in escrow as trustee said original warrants until the obligations herein authorized are paid in full. And the holder, or holders, of such obligations, in addition to all other rights, shall be subrogated to the rights of the holders of such original warrants. Upon payment of such obligation said original warrants shall be canceled by the State Treasurer. There is hereby appropriated out of funds allocated in present and/or future laws to the Old Age Assistance Fund a sum sufficient to pay said obligations and the interest thereon.

"(3) Interest. Interest on such original warrants shall be paid in accordance with the contract or contracts under which they were issued up to the date of the exchange for the obligations authorized herein.

"(4) Obligations as Security for State Deposits. Such obligations to be substituted therefor shall be eligible to secure deposits of all funds of the State of Texas, and of counties, cities, districts, and political subdivisions of and in the State of Texas on the basis of one dollar principal amount of such obligations for each dollar of deposited funds.

"(5) Duties of State Officers. The Governor, State Treasurer, Attorney General, Texas Old Age Assistance Commission, Comptroller of Public Accounts, and the Secretary of State are hereby directed to do any and all things necessary to accomplish the purposes of this Section.

"(6) Obligations Incontestable. When such obligations shall have been issued in accordance with a resolution adopted by the Texas Old Age Assistance Commission and shall have been approved by the Attorney General, they shall be incontestable and the full faith and credit of the State shall be pledged to their payment."

We think the effect of the above quoted provisions of House Bill No. 179, Acts, Regular Session, 46th Legislature, is to create deferred obligations of the State against the Texas Old Age Assistance Fund, with maturity dates in accordance with the schedule set up. Therefore, such interest-bearing warrants or Treasury Certificates issued in lieu thereof, cannot, by reason of such deferred maturity dates, be considered as present and subsisting charges against the Texas Old Age Assistance Fund so as to create a deficit therein at this time. The moving purpose and controlling intent of the Legislature, in the enactment of the Acts hereinabove reviewed, was to authorize the issuance of warrants against the Texas Old Age Assistance Fund when there were no funds existing to pay said warrants, and to defer the payment of such warrants by allowing interest to accrue thereon, with the expectancy that the income allocated to such fund from certain tax measures would in the future be sufficient to fully pay such outstanding interest-bearing warrants, along with current assistance and expense warrants: and until such time, to allow the Old Age Assistance Commission to continue to pay in full current old age assistance benefits and administrative expenses.

We, therefore, conclude that the Texas Old Age Assistance Fund at the present time has funds available for the payment of the

administrative salaries and expenses mentioned in your letter, and that you may lawfully issue warrants against such Fund or the Texas Old Age Administration Fund, a non-statutory fund created for convenience, in accordance with the governing Departmental Appropriation Bill.

Trusting the foregoing fully answers your inquiry, we are

Yours very truly

ATTORNEY GENERAL OF TEXAS

By   (Signed) Pat M. Neff, Jr.
Pat M. Neff Jr.
Assistant

PMN:N

APPROVED AUG 19, 1939

(Signed) Gerald C. Mann
ATTORNEY GENERAL OF TEXAS

Approved
Opinion Committee
By R. W. F.
Chairman